UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| HUNTERS RUN GUN CLUB, LLC, ET AL. | CIVIL ACTION NO. |
|---|---|
| VERSUS | 17-176-SDD-EWD |
| EDDIE D. BAKER, ET AL. | |

### RULING AND ORDER

Before the Court[1] is a Motion to Compel Production from Keith Morris and Bridgeview Gun Club, LLC (the "Motion"),[2] filed by Plaintiffs Hunters Run Gun Club, LLC ("Hunters Run") and The Great International Land Company, LLC (collectively, "Plaintiffs"). The Motion is opposed[3] by Defendants Keith Morris ("Morris") and Bridgeview Gun Club, LLC ("Bridgeview") (collectively, "Defendants"). Plaintiffs have filed a reply.[4]

On January 25, 2019, the parties participated in a telephone status conference with the undersigned to discuss the Motion. At that time, the parties advised that they had not resolved the issues raised in the Motion. During the conference, the parties presented arguments and the Court took the Motion under advisement.[5] For the reasons that follow, the Motion is **GRANTED IN PART.**

### I. Background

This litigation involves allegations that Defendants conspired with the Law Enforcement District of the Parish of West Baton Rouge (the "LED") by terminating the lease previously

---

[1] A magistrate judge may "hear and determine" non-dispositive pre-trial motions pursuant to 28 U.S.C. § 636(b)(1)(A). "A motion to compel is a non-dispositive, pretrial discovery motion." *State Farm Mut. Auto. Ins. Co. v. Friedman,* No. 98-2918, 2002 WL 649417, at *1 (N.D. Tex. Jan. 14, 2002) *citing Castillo v. Frank,* 70 F.3d 382, 385 (5th Cir. 1995).
[2] R. Doc. 63.
[3] R. Doc. 73.
[4] R. Doc. 133.
[5] R. Doc. 179.

belonging to a Hunters Run affiliate for a shooting facility and gun club run by Hunter's Run and leasing the facility to Hunter's Run's competitor, Bridgeview, which is owned and controlled by Morris.[6] Plaintiffs specifically allege that the LED notified Hunter's Run that it would not renew its lease with Hunter's Run as operator of the gun club shortly after Hunter's Run terminated the employment of its former manager, Defendant Eddie Baker ("Baker"), in August 2016. About three months after Baker's termination, in November 2016, Plaintiffs contend that the LED, a public entity, tried to lease the gun club to Morris, notwithstanding that Morris did not submit the highest bid to the LED for the lease. Plaintiffs successfully obtained injunctive relief against the LED in state court for the LED's failure to comply with Louisiana's bid law. Thereafter, the LED published a bid request, which resulted in lease of the gun club to Bridgeview. Plaintiffs allege that this conspiracy between Morris, Baker, Bridgeview and the LED resulted in damages to Plaintiffs.[7]

*Plaintiffs' Motion*

In the course of discovery, Plaintiffs sought to obtain information in support of their conspiracy claims from Morris and Baker, including text messages and other communications between Morris and Baker "regarding any matter asserted in this litigation."[8] Plaintiffs served Baker with discovery requests,[9] but served a subpoena duces tecum ("subpoena") with an attached list of requests for production on Morris.[10] The request at issue in the Motion states: "3. Please

---

[6] R. Doc. 63-1, p. 1.
[7] R. Doc. 63-1, pp. 1-2.
[8] R. Doc. 63-1, p. 2.
[9] R. Doc. 63-3, p. 2 ("Request for Production No. 9: Please produce any and all documents, including emails, text message, and other communications, by and/or between you and Keith Morris and employees, officers, directors, shareholders, representatives and agents of Keith Morris, from January 2015 through present, regarding any matter asserted in the instant litigation.").
[10] The subpoena is dated August 31, 2017. R. Doc. 63-2, p. 1. However, as noted *infra*, Morris was added as a defendant on May 10, 2018. R. Doc. 48. The parties argue the applicability of Fed. R. Civ. P. 34 in their briefs. Although the requests were originally made to Morris when he was not a party, now that he is a party, Fed. R. Civ. P. would govern production. Accordingly, the court will proceed with analysis under Fed. R. Civ. P. 34.

2

produce any and all correspondence, including but not limited to emails, text messages, facsimiles, voice mail message, and other communications, including correspondence referencing communications, by and/or between you and Eddie Baker from January 2015 through present, regarding any matter asserted in the instant litigation....)"[11]

Defendants denied having possession of any responsive documents.[12] However, Plaintiffs received Baker's AT&T cell phone records from January 2016 to February 2017,[13] during the period of time encompassing Baker's termination through the LED's award of the lease to Bridgeview. Plaintiffs aver that these records, which identify participants to phone calls[14] and text messages and the dates and times thereof but do not disclose the substance of text messages, show that Baker and Morris communicated immediately after Baker's termination. Plaintiffs contend that the records show that Baker also communicated with James Edgmon ("Edgmon"), the owner of R&R Trap Sales, a gun equipment vendor, just after Baker's termination, which is significant because Morris ordered equipment from Edgmon after the first LED lease was awarded to Bridgeview in December 2016. Plaintiffs further contend that the records show that Baker communicated with Morris and Edgmon earlier in 2016 while Baker was still employed by Plaintiffs.[15] Thus, Plaintiffs contend that these phone records (and deposition testimony) establish that Defendants have responsive text messages that have not been produced.[16]

---

[11] R. Doc. 63-2, p. 6.
[12] R. Doc. 63-4, p. 2, Morris' responses to subpoena ("Respondents are not in possession of documentation responsive to this Request.") and R. Doc. 63-5, p. 2, Baker's responses to discovery requests ("Without waiving the foregoing objections, Baker further answers, to the best of his knowledge, there are no text and/or email communications between Baker and Keith Morris regarding the allegations asserted in this litigation....").
[13] R. Doc. 63-6. Plaintiffs claim that AT&T has not responded to a subpoena seeking Morris' phone records. R. Doc. 63-1, p. 3.
[14] *See* R. Doc. 63-8 and 63-9, which identify the cell phone numbers of Morris and Edgmon.
[15] R. Doc. 63-1, pp. 3-4 *and see* R. Doc. 63-7.
[16] R. Doc. 63-1, p. 4.

On September 18, 2018, Plaintiffs filed the instant Motion, seeking to compel Defendants to produce the referenced communications because the information sought is relevant and supports Plaintiffs' conspiracy theory. Plaintiffs aver that they addressed Defendants' failure to produce with Defense counsel, but Plaintiffs have not received a substantive response from Defendants. Further, Plaintiffs contend that they suggested that Morris could authorize AT&T to release the contents of his text messages to Plaintiffs, rather than produce them himself. However, Morris has refused to provide the authorization.[17] Plaintiffs argue that Morris' refusal to authorize the release shows that the requested information is damaging to Morris' case.[18] Plaintiffs seek an order compelling Defendants to produce all responsive communications, including but not limited to the text messages shown on the AT&T records received by Plaintiffs, or in the alternative, compelling Defendants to produce them to the Court for an *in camera* review of their discoverability.[19]

*Defendants' Opposition*

Defendants aver that they have communicated to Plaintiffs, on multiple occasions and in their discovery responses,[20] that they are not in possession of the requested information.[21] Defendants contend that Bridgeview does not own or maintain a cell phone and therefore cannot produce any records. With respect to Morris, Defendants contend that Morris disclosed to Plaintiffs that: Morris initially had service through AT&T until the August 2016 flood that occurred in East Baton Rouge Parish, Louisiana; since the flood, Morris has had service through Verizon; and, Morris no longer has the pre-flood phone or Verizon or AT&T billing records.

---

[17] R. Doc. 63-1, p. 4, R. Doc. 63-10 and R. Doc. 63-11.
[18] R. Doc. 63-1, p. 4.
[19] R. Doc. 63-1, p. 5.
[20] R. Doc. 73-1.
[21] R. Doc. 73, pp. 1-2.

4

Morris contends that he does not oppose Plaintiffs' subpoena to AT&T for the records, and Plaintiffs have not subpoenaed Verizon for records.[22]

Defendants aver that Plaintiffs have no basis to accuse Morris of withholding information originating from Baker, when two digital forensic analysts retained by Plaintiffs analyzed Baker's personal computer and the Hunter's Run computers to which Baker had access at the time of his employment and failed to find anything of interest and/or worthy enough to be presented in an expert report.[23] Defendants contend that they have devoted a substantial amount of time to responding to Plaintiffs' lengthy discovery requests and have fully responded that they are not in possession of the information requested.[24]

*Plaintiffs' Reply*

Plaintiffs argue that even though Morris no longer has the AT&T phone and did not retain the records, he still has the ability to obtain the records, because, as set forth in this Court's *Southern Filter Media, LLC v. Halter*[25] decision, "[d]ocuments are under the control of a party if the party 'has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party to the action.'"[26] Thus, according to Plaintiffs, Morris has control over his cell phone records, including the contents of the text messages, for the purposes of production under Fed. R. Civ. P. 34(a) since he can request that his service providers give him a copy of the records or produce the records to Plaintiffs.

Plaintiffs assert that there is additional evidence to show that Defendants have improperly withheld the requested information, in the form of a supplemental document production Plaintiffs

---

[22] R. Doc. 73, p. 3.
[23] R. Doc. 73, pp. 3-4 *and see* R. Doc. 73-2.
[24] R. Doc. 73, pp. 4-5.
[25] R. Doc. 133, p. 1, *citing* No. 13-116, 2014 WL 4278788 (M.D. La. Aug. 29, 2014).
[26] *Id.* at *5 (citations omitted).

5

received from the LED's counsel Christopher Whittington ("Whittington") on October 15, 2018.[27] Whittington initially listed two documents (among others) on his privilege log in lieu of production, but ultimately withdrew the assertion of privilege as to two of the documents and produced them to Plaintiffs following the filing of Plaintiffs' Motion to Compel Production from Whittington.[28] Plaintiffs aver that one of the documents contains "detailed technical discussions regarding the equipment and plans for operating the gun club [that] must have taken place between Eddie Baker and Morris in order for Morris' counsel or Morris (or Baker) to prepare [it]"[29] and that both of the documents concern "negotiations between the LED and Keith Morris regarding the terms of the lease over a month before the bid process was even begun."[30] Moreover and importantly, according to Plaintiffs, those two documents are still on the privilege log submitted by Matthew Green ("Green"), counsel for Defendants, in Green's responses to Plaintiffs' subpoena to Green.[31] Plaintiffs argue that Green's objection to production of those documents, which is based on privilege pursuant to La. Code of Evidence art. 408,[32] is inapplicable because this matter, and the two documents, are all unrelated to any potential settlement between the LED and Morris.[33]

---

[27] R. Doc. 133, p. 2 and R. Doc. 133-3.
[28] R. Doc. 113, p. 2, R. Doc. 133-1, R. Doc. 133-2, and R. Doc. 133-3. Plaintiffs withdrew the Motion to Compel against Whittington. R. Doc. 74.
[29] R. Doc. 133, p. 3, R. Doc. 133-1.
[30] R. Doc. 133, p. 3, R. Doc. 133-1 and R. Doc. 133-2.
[31] *See* R. Docs 179 and 180, wherein this Court recently granted Plaintiffs' Motion to Compel Production from Matthew Green (R. Doc. 62) and ordered Green to produce the documents responsive to Plaintiffs' May 21, 2018 subpoena and previously withheld on the basis of privilege (*see* R. Doc. 62-8) to Plaintiffs.
[32] "In a civil case, evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, anything of value in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This Article does not require the exclusion of any evidence otherwise admissible merely because it is presented in the course of compromise negotiations. This Article also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."
[33] R. Doc. 133, pp. 3-4.

Thus, Plaintiffs argue that Defendants have wrongly withheld production of these documents because they do not have a valid claim of privilege.

*January 25, 2019 Telephone Conference*

During the parties' January 25, 2019 telephone conference with the Court, the parties presented argument as to whether, under Fed. R. Civ. P. 34, Morris has possession, custody, or control of the cell phone records containing the contents of the text messages. Plaintiffs argued that, per *Southern Filter Media*, the text message records are in Morris' control because he has the right to obtain them, but he refuses to give his consent. Morris argued that Plaintiffs have obtained the records they sought from AT&T and Morris has no other responsive information in his control. Morris further argued that *Southern Filter Media* does not support Plaintiffs' position, and Morris is not aware of any cases that obligate him to either give his consent to release the records or to obtain the records from his provider(s).

## II. Law and Analysis

### A. Legal Standards and the Scope of the Motion

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[34] and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[35] The Court must additionally limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative

---

[34] *Crosby v. Louisiana Health Service and Indem. Co.,* 647 F.3d 258, 262 (5th Cir. 2011) ("Generally, the scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'") *citing* Fed. R. Civ. P. 26(b)(1) and *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982).
[35] Fed. R. Civ. P. 26(b)(1).

7

or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[36]

Further, Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible things:

> (a) In General. A party may serve on any other party a request within the scope of Rule 26(b):
> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items **in the responding party's possession, custody, or control**:
> (A) any designated documents or electronically stored information--including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
> (B) any designated tangible things…(emphasis added)

"Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections."[37] "A party objecting to discovery 'must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is 'overly broad and burdensome' or 'oppressive' or 'vexatious' or 'not reasonably calculated to lead to the discovery of admissible evidence.'"[38]

The Court finds that Fed. R. Civ. P. 34 is applicable to Plaintiffs' claims herein, as the

---

[36] Fed. R. Civ. P. 26(b)(2)(C).
[37] *Vasquez v. Conquest Completion Services, LLC,* No. 15-188, 2018 WL 3611891, at *2 (W.D. Tex. Jan. 10, 2018) *citing Cheshire v. Air Methods Corp*, No. 15-933, 2015 WL 7736649, at *2 (W.D. La. Nov. 30, 2015) (*citing McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).
[38]*Vasquez,* 2018 WL 3611891 at *2, *citing Cheshire,* 2015 WL 7736649 at *4 (*quoting Reyes v. Red Gold, Inc.*, No. 05-191, 2006 WL 2729412, at *1 (S.D. Tex. Sept. 25, 2006)).

8

parties' arguments on the Motion, in brief and during the conference, were specifically premised upon the applicability of Fed. R. Civ. P. 34, and because Plaintiffs seek production of information from Morris, who was named Defendant in Plaintiff's First Amended Complaint about ten months ago.[39]

Regarding the scope of the Motion, the Court has already granted Plaintiffs' Motion to Compel Production from Green and ordered Green to produce the documents responsive to Plaintiffs' subpoena previously withheld based on privilege.[40] Therefore, to the extent the instant Motion raises production of those documents in Plaintiffs' Reply brief,[41] that request is now moot. Plaintiffs otherwise seek production of the contents of text messages exchanged between Morris and Baker from January 1, 2015 through August 31, 2017, regarding "any matter asserted in the instant litigation,"[42] in order to support their conspiracy claims. The Court notes that Plaintiffs do not provide evidence of any other responsive information that is allegedly being withheld, and Plaintiffs' arguments are focused on the contents of text messages. Therefore, the Court considers the issue presented by the Motion to be limited a request for an order compelling production of Morris' cell phone records as described above.

**B. The Requested Records are Responsive and Relevant**

Plaintiffs argue that the requested text messages are responsive to Plaintiffs' request for production to Morris,[43] and are relevant to Plaintiffs' conspiracy claims, particularly considering the timing of the texts and the participants thereto. Defendants offer no argument to the effect that the requested text messages are not responsive to Plaintiffs' document request or that they are

---

[39] R. Doc. 48.
[40] R. Docs. 179-180.
[41] R. Doc. 133, pp. 3-4.
[42] R. Doc. 63-2, pp. 1, 6. The request was dated August 31, 2017 and seeks information from "January 2015 through present."
[43] R. Doc. 63-2, p. 6.

9

irrelevant to Plaintiffs' claims herein. The Court finds that the contents of the text messages are responsive and relevant. First, they are within the scope of Plaintiffs' document request, as they constitute "…text messages…by and/or between [Morris] and Eddie Baker from January 2015 through present, regarding any matter asserted in the instant litigation…."[44] Second, a discovery request is relevant when the request "seek[s] admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'"[45] Considering the participants to, and the timing of, these text messages, the Court finds that they could have bearing on Plaintiffs' claims herein, which is that Baker, Morris, and Bridgeview all allegedly conspired with the LED, during and after Baker's termination, to damage Plaintiffs' business and have Plaintiffs' lease canceled by the LED so that the lease could be awarded to Defendants.[46]

### C. The Requested Information is Within the Control of Morris

Plaintiffs contend that, per *Southern Filter Media, LLC v. Halter,* the requested text messages are within Morris' control because he has the ability to request that they be produced to him or be released to Plaintiffs by signing the release of the records required by his service provider(s).[47] However, Morris contends that, while he has not opposed Plaintiffs' subpoena to AT&T, he has no obligation to execute a release, and the records are not in his "possession, custody, or control" as contemplated by Fed. R. Civ. P. 34.

The Court finds that *Southern Filter Media* is not controlling because it is factually distinguishable. In that case, the defendant requesting the documents sought to compel the plaintiff

---

[44] R. Doc. 63-2, p. 6.
[45] *Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 820 (5th Cir. 2004) (citation and internal marks omitted).
[46] R. Doc. 48, *see e.g.*, ¶¶ 23-24, 26, and 38. *See Vasquez,* 2018 WL 3611891, at *2 (W.D. Tex. Jan. 10, 2018) ("Because Defendant's cell-phone records will help the Parties prove or disprove Plaintiff's allegations, the cell-phone records are relevant and discoverable in this case") *citing* Fed. R. Civ. P. 26(b)(1) and *Arceneaux v. Assuranceforeningen Gard Ins. Co.*, No. 09-654, 2010 WL 744922, at *2 (W.D. La. Feb. 25, 2010) (denying motion to quash the defendant's subpoena to the plaintiff's cell phone carrier because the information sought was relevant to the plaintiff's claims).
[47] R. Doc. 133, p. 1, *citing* No. 13-116, 2014 WL 4278788 (M.D. La. Aug. 29, 2014).

(SFM) to obtain information from two other non-party companies (Sun Minerals and Kinder Sand) that had the same management and ownership as the plaintiff. The Court granted the plaintiff's motion for a protective order on the basis that the defendant failed to show that the three companies were sibling companies, that they shared a parent company, that the plaintiff had any ownership interest in the other companies, that the companies exchanged any documents in the course of business, or that the plaintiff had any control over documents solely in the possession of the other two companies. Further, it was not enough that the three companies shared the same four owners because the owners were not parties to the case.[48] In contrast, this case does not involve a request to a party-company to produce records in the possession of a related non-party company under common ownership. Rather, Plaintiffs herein seek to compel Morris to execute a release so that they can obtain records of his text messages from his cell phone service providers and/or to compel Morris to obtain the records himself and produce them to Plaintiffs.

The Court's research reveals several cases on point, none of which were cited by the parties. It is clear that the courts in this circuit (and nationwide) have different views on whether they are empowered under Fed. R. Civ. P. 34(a) to order a party to sign an authorization or release that permits the requesting party to obtain documents such as cell phone records from non-parties. *Vasquez v. Conquest Completion Services, LLC,*[49] is factually similar in that it involves a request for a release of cell phone records and cogently addresses the circuit split.[50] In *Vasquez*, the plaintiff claimed that the accident in which the plaintiff was injured may have been caused by the negligence of the defendant in using his cell phone. The *Vasquez* plaintiff thus sought an order

---

[48] 2014 WL 4278788 at *6.
[49] No. 15-188, 2018 WL 3611891 (W.D. Tex. Jan. 10, 2018).
[50] Several cases have addressed the two paths courts take on this issue. *See e.g.*, *Scott v. City of Bismarck,* No. 17-059, 328 F.R.D. 242, 246, 2018 WL 4440661 (D.N.D. Sep. 17, 2018) (referencing courts inside and outside of this circuit).

11

compelling the driver defendant to execute an authorization to release his cell phone records upon his refusal to execute one.[51] After finding that the cell phone records were relevant to the plaintiff's claims,[52] the *Vasquez* court recognized that some courts in this circuit have held that they are not empowered by the Federal Rules of Civil Procedure to compel parties to sign authorizations so that the requesting party can obtain documents from a non-party. *See, e.g., Cheshire v. Air Methods Corp,* (denying request for order compelling execution of a release for employment records and noting that other courts have held that Fed. R. Civ. P. 34 itself does not give courts the power to order a party to sign a release.)[53]

The *Vasquez* court also noted, however, that other courts in this Circuit have reached the opposite conclusion. *See Mir v. L-3 Communications Integrated Systems, L.P.*,[54] (ordering execution of a release of Social Security records on the basis that Fed. R. Civ. P. 34 and 37 empower the court to compel parties to sign written releases or authorization forms consenting to the production of various documents, and holding):

> The Court agrees with other courts' observations that a party can seek documents such as Social Security or health records directly from a non-party custodian through a Rule 45(a) subpoena—in response to which the non-party may or may not refuse to release records without the written authorization of the individual to whom such records pertain—and that a party can, using Rule 34(a), request the records directly from the other party and thereby require that party to collect them from non-party custodians to the extent that the requested information is within the responding party's possession, custody, or control.
>
> But those options' availability does not foreclose a party's using Rule 34(a) to seek a signed authorization or release from another party to facilitate disclosure by a non-party custodian of documents that are under the responding party's control but not within that party's possession or custody.

---

[51] *Vasquez,* 2018 WL 3611891 at *2.
[52] 2018 WL 3611891 at *2.
[53] No. 15-933, 2015 WL 7736649, at *4 (W.D. La. Nov. 30, 2015).
[54] No. 15-2766, 319 F.R.D. 220, 229, 2016 WL 4427488 (N.D. Tex. 2016).

12

> That is because requests for signing and executing written releases or authorizations may be properly made under Rule 34(a)—and then, if necessary, compelled under [] Rule 37(a)—insofar as they require a responding party to permit the requesting party or its representative to inspect or copy designated documents or electronically stored information in the responding party's control. *See* Fed. R. Civ. P. 34(a)(1). Reading Rule 34(a) to permissibly require parties to sign and execute written releases and authorization forms, so understood, does not amount to impermissibly requiring a responding party to create a new or non-existent document.[55]

*See also Lischka v. Tidewater Services, Inc.*,[56] wherein the magistrate judge's order compelling plaintiffs to sign written authorizations for medical, tax, Social Security, and employment records was affirmed, and the Court squarely held:

> …rule [34] allows for production of documents 'which are in the possession, custody, *or control*' of the party upon whom the request is served and that, for purposes of Rule 34, plaintiffs are in control of records that can be released via an authorization, 'because, by either granting or withholding [their] consent, [they] may determine who shall have access to them.'"(emphasis in original).[57]

Further, *see Allen v. Indian Harbor Marine, Inc.*,[58] which involved a factual scenario similar to the one herein in that the plaintiff contended that the documents requested were not under his possession, custody, or control and he was under no obligation to execute the requested Social Security and military records authorizations because the defendants had already subpoenaed those records pursuant to Fed. R. Civ. P. 45. Notably, the court rejected this argument, holding:

> Plaintiff's tortured argument regarding the availability of the requested documents pursuant to FRCP Rule 45 subpoena merits no discussion. The Court previously noted and any attorney who has ever handled even one case implicating records and documents in the physical possession of non-parties and particularly government entities, including medical records, military records, social security disability records, tax records, and the like,

---

[55] *Mir,* 319 F.R.D. at 229-30.
[56] No. 96-296, 1997 WL 27066 (E.D. La. Jan. 22, 1997).
[57] No. 96-296, 1997 WL 27066, at *2 (E.D. La. Jan. 22, 1997) (internal citations omitted).
[58] No. 96-3135, 1997 WL 666210, at **1-2 (E.D. La. Oct. 24, 1997).

13

will not be released without the written authorization of the individual to whom such records pertain.[59]

Finally, *see Wymore v. Nail* (granting motion to compel and ordering plaintiff to execute HIPAA authorization release forms so that his medical records could be obtained by the defendants in response to plaintiff's damage claims involving a broken jaw).[60]

The Court has already found that the requested records, including the content of the text messages, are relevant and discoverable. Because the records are relevant and discoverable, Morris cannot block production of a portion of the records, *i.e.*, the contents of the text messages, simply by refusing to execute the required releases and/or refusing to request the records himself, particularly since Morris did not (and does not) object to Plaintiffs subpoenaing his service providers for the records in the first instance. *See, e.g.*, Defendants' Opposition ("Mr. Morris does not oppose plaintiff's (sic) obtaining those records via subpoena….").[61] Therefore, the Court will grant the Motion to Compel as to Morris. While this Court generally agrees with the line of cases that have held that the Federal Rules empower courts to order parties to execute releases that direct non-parties to produce relevant information, particularly when the non-party has already been subpoenaed but refuses to release the requested information in the absence of such a release,[62] the Court finds it appropriate in this case to order as follows, which is designed to effectuate the timely production of the requested information: Morris must either: 1) provide Plaintiffs with executed release forms/authorizations required by Morris' cellular phone service providers to facilitate release of Morris' cell phone records (including contents of messages) by and between Morris and

---

[59] 1997 WL 666210, at *2, and further noting "the legion of cases which hold either implicitly or explicitly, that Rule 34 in tandem with Rule 37 empowers district courts to compel parties to sign written authorizations consenting to the production of various documents." *Id*. at *1.
[60] No. 14-3493, 2016 WL 1452437, at *3 (W.D. La. Apr. 13, 2016).
[61] R. Doc. 73, p. 3.
[62] Plaintiffs' counsel asserted at the hearing that the carriers require consent *and see* R. Doc. 63-1, p. 3, wherein Plaintiffs averred that AT&T has been subpoenaed for Morris' records but has not responded.

14

Eddie Baker from January 1, 2015 through August 31, 2017 regarding any matter asserted in the instant litigation, or 2) Morris must obtain and produce the above-described cell-phone records.[63] The Court additionally orders that all such records produced are subject to the parties' July 5, 2018 Stipulated Protective Order,[64] and further, if the records ultimately received contain the contents of text messages that do not fall within the description set forth above, the contents of those nonresponsive text messages must be redacted.

### D. There is No Evidence that Bridgeview Has Responsive Records

Defendants contend that Bridgeview does not have any records because it is a limited liability company that does not possess a cell phone.[65] Plaintiffs did not address this argument. Moreover, Plaintiffs' subpoena and request for documents were directed to Morris, not Bridgeview.[66] Plaintiffs' substantive argument is also directed to Morris, in that Plaintiffs seek for Morris to execute a release of the contents of the records.[67] As there is no indication that Bridgeview has withheld any responsive records or persuasive argument or evidence from Plaintiffs that it does, there is no basis for Plaintiffs' Motion against Bridgeview and thus the Motion is **DENIED** as to Bridgeview.

## III. Conclusion

For the reasons set forth herein, **IT IS HEREBY ORDERED** that the Motion to Compel Production from Keith Morris and Bridgeview Gun Club, LLC[68] is **GRANTED IN PART**. By no later than **February 21, 2019**, Defendant Keith Morris shall **EITHER**: 1) provide Plaintiffs

---

[63] *See e.g., Vasquez*, 2018 WL 3611891 at *3 ("This Court will not pitch its tent either way. Instead, Defendant may choose to either sign the authorization enabling Plaintiff to obtain the cell-phone records from the non-party custodian or Defendant may obtain the records himself from the non-party custodian and produce the records.")
[64] R. Doc. 57.
[65] R. Doc. 73, p. 2.
[66] R. Doc. 63-2, p. 1 (subpoena duces tecum directed to "Keith E. Morris") and p. 4 ("Exhibit A to Subpoena to Produce Documents Directed to Keith E. Morris").
[67] R. 133, pp. 1-2.
[68] R. Doc. 63.

with executed release forms/authorizations required by Morris' cellular phone service providers to facilitate release of Morris' cell phone records (including contents of messages) by and between Morris and Eddie Baker from January 1, 2015 through August 31, 2017 regarding any matter asserted in the instant litigation **OR** Morris shall obtain and produce the above-described cell-phone records.

**IT IS FURTHER ORDERED** that all records produced pursuant to Morris' signed release forms are subject to the parties' July 5, 2018 Stipulated Protective Order,[69] and further, if the records ultimately received contain the contents of text messages that do not fall within the description set forth above, the contents of those nonresponsive text messages must be redacted.

Signed in Baton Rouge, Louisiana, on February 7, 2019.

                                        **ERIN WILDER-DOOMES**
                                        **UNITED STATES MAGISTRATE JUDGE**

---

[69] R. Doc. 57.