UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

HUNTERS RUN GUN
CLUB, LLC, ET AL.                                              CIVIL ACTION

                                                               17-176-SDD-EWD
VERSUS

EDDIE D. BAKER

## RULING

This matter is before the Court on the *Joint Motion for Partial Summary Judgment on Louisiana Unfair Trade Practices Act Claim*[1] and the *Motion for Partial Summary Judgment on Louisiana Unfair Trade Practices Act Claim and Res Judicata and Issue Preclusion*[2] filed by Defendants Eddie D. Baker ("Baker"), Sugar-West, Inc. ("Sugar-West"), Bridgeview Gun Club, LLC ("Bridgeview"), and Keith Morris ("Morris" or "Morris Entities") (collectively, "Defendants"). Plaintiffs, Hunters Run Gun Club, LLC ("HRGC") and Great International Land Company, LLC ("GILC")(collectively "Plaintiffs") have filed *Oppositions*[3] to the motion, to which Defendants filed a *Reply*.[4]

### I.     FACTUAL BACKGROUND

This case arises out of claims that the Defendants conspired with the Law Enforcement District of the Parish of West Baton Rouge ("LED") by terminating a lease previously belonging to a HRGC affiliate for a shooting facility and gun club run by HRGC

---

[1] Rec. Doc. No. 86.
[2] Rec. Doc. No. 96.
[3] Rec. Doc. Nos. 149, 163, and 193.
[4] Rec. Doc. No. 174.
52441

and then leasing the facility to a HRGC competitor – Bridgeview – which is currently owned and controlled by Morris.[5] Plaintiffs specifically allege that the LED notified HRGC that it would not renew its lease with HRGC as operator of the gun club shortly after HRGC terminated the employment of its former manager, Defendant Baker, in August 2016. About three months after Baker's termination, in November 2016, Plaintiffs contend that the LED, a public entity, tried to lease the gun club to Morris, notwithstanding that Morris did not submit the highest bid to the LED for the lease. Plaintiffs successfully obtained injunctive relief against the LED in state court for the LED's failure to comply with Louisiana's bid law. Thereafter, the LED published a bid request, which resulted in lease of the gun club to Bridgeview. Plaintiffs allege that this conspiracy between Morris, Baker, Bridgeview and the LED resulted in damages to Plaintiffs.[6]

## II. LOUISIANA UNFAIR TRADE PRACTICES ACT ("LUTPA")

LUTPA provides a civil cause of action to recover actual damages to "[a]ny person who suffers any ascertainable loss of money or movable property ... as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405."[7] Section 51:1405(A) declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Courts must determine "on a case-by-case basis" what conduct constitutes an "unfair trade practice" and "have repeatedly held that, under this statute, the plaintiff must show the alleged conduct offends established public policy and ... is

---

[5] Rec. Doc. No. 63-1 at 1.
[6] *Id.* at 1-2.
[7] La. R.S. 51:1409.
52441

immoral, unethical, oppressive, unscrupulous, or substantially injurious."[8] Further, a trade practice that amounts to fraud, deceit, or misrepresentation is "deceptive" for purposes of LUTPA.[9]

Additionally, "LUTPA recognizes a claim for breach of fiduciary duty that rests on the misappropriation of information that is confidential but not a trade secret."[10] An employer may recover under LUTPA when "'a former employee breaches his duty not to use his former employer's confidential information.'"[11] To prevail on a breach of fiduciary duty claim based on a breach of confidence, a plaintiff must prove: (1) that it possesses knowledge or information that is not generally known; (2) that it communicated the knowledge or information to the defendant under an express or implied agreement limiting the defendant's use or disclosure of the information; and (3) that the defendant used or disclosed the knowledge or information in violation of the confidence, resulting in injury to the plaintiff.[12]

In support of their motion, Defendants argue that the information listed by HRGC as proprietary is not, in fact, proprietary because it was never documented, and much of it is knowledge that Baker gained as employee.[13] The Defendants further contend that

---

[8] *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1059 (La. 2010) (quotation and citations omitted).
[9] *Total Safety v. Rowland*, 2014 WL 6485641, at * 4 (E.D. La. Nov. 18, 2014) (citations omitted).
[10] *CheckPoint Fluidic Sys. Int'l*, 888 F. Supp. 2d at 795 (citing *Defcon, Inc. v. Webb*, 687 So. 2d 639, 642-43 (La. App. 1997)).
[11] *Id.* (quoting *L-3 Commc'ns Westwood Corp. v. Robichaux*, 2008 WL 577560, at *5 (E.D. La. Feb. 29, 2008)); *Harrison v. CD Consulting, Inc.*, 934 So. 2d 166, 170 (La. App. 2006) ("historically, an employee's breach of his fiduciary duty to his employer has been contemplated in instances when an employee has engaged in dishonest behavior or unfair trade practices for the purpose of his own financial or commercial benefit"); *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F. Supp. 2d 521, 535 (E.D. La. 2007) ("Thus, the question of breach of fiduciary duty or loyalty as an employee collapses into the question of whether the employee's actions constitute unfair trade practices, which is defined in the [LUTPA]").
[12] *Defcon*, 687 So. 2d at 643 (citing *Engineered Mech. Servs., Inc. v. Langlois*, 464 So. 2d 329, 334 (La. App. 1984)).
[13] R. Doc. 123 at 21, 25, & 30.
52441

Baker was an experienced shooter and planned and held events for HRGC as a volunteer before he was an employee; thus, the knowledge and skills HRGC now claims are proprietary are not prohibited by LUTPA.[14]

Alternatively, even if such information was deemed proprietary, Defendants maintain that HRGC has offered no summary judgment evidence that Baker used or shared that information with anyone;[15] rather, it relies only on the language used in Morris' bid proposal ("RFP") to argue that that Baker and Morris engaged in acts prohibited by LUTPA.[16] HRGC suggests that Morris holding Baker out as knowledgeable of HRGC's customers and vendors and his working knowledge of equipment are "proof positive of misappropriation and improper use of proprietary information."[17] However, Defendants argue that "the Court cannot read into the RFP words that are simply not there or intended, especially when there is no other evidence of any misappropriation or use of such lists.[18]

Finally, Defendants point out that a required element of LUTPA is intent, quoting that the "actions must have been taken with the specific purpose of harming the competition. Therefore, only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA."[19] In this case, Defendants maintain that: (1) Baker did not quit his job to go into competition with HRGC but was fired; (2) Baker was never promised a job with

---

[14] *Id.* at 30.
[15] *Id.* at 32-33.
[16] *Id.* at 34.
[17] *Id.*
[18] *Id.*
[19] *Id.* at 18 (*quoting* Duperon Corp. v. Screening Sys. Int'l, Inc., No. 12-296, 2013 WL 177418 at *6 (M.D. La. 1/16/13)).

52441

Bridgeview, due to the fact that Morris interviewed other candidates for the General Manager position; and (3) there was no guarantee that Morris would win the lease at all.[20]

HRGC argues that, rather than specific instances of sharing information, the focus of its LUTPA claim is the nature and purpose of Baker's and Morris' conduct, beginning when Baker was still a HRGC employee and continuing today.[21] While the misappropriation of proprietary information is an element of its LUTPA claim, HRGC contends the predominate question is whether Baker's and Morris' "successful conspiracy to eliminate HRGC and ensure that Bridgeview assumed control of the gun club constituted an unfair and deceptive trade practice."[22]

HRGC also notes that Defendants acknowledge in their own brief that the LUTPA analysis is a fact-specific one and that "one critical factor is the defendant's motives,"[23] which is an inappropriate determination at the summary judgment stage.[24] Although Plaintiffs lack documentary evidence demonstrating a conspiracy between Morris and Baker, they argue that the language of the RFP, which states that Morris Entities hired Eddie Baker as General Manager for Bridgeview due, in part, to the fact that he was General Manager of HRGC for the past three years and had "a vast knowledge of every aspect of the business, established vendors and customers, working knowledge of all type of equipment, . . . " demonstrates that there is at least a genuine factual dispute regarding whether Morris hired Baker to use his experience to replace HRGC and assume

---

[20] *Id.* at 38-39.
[21] R. Doc. 166 at 20.
[22] *Id.* at 17.
[23] R. Doc. 123 at 18.
[24] R. Doc. 166 at 16.
52441

operation of the gun club.[25] Plaintiffs also note that Morris has acknowledged that his attorney worked with the LED attorney to prepare the LED's Request for Bid and tailor it to Morris' bid proposal, ensuring that Morris would be awarded the lease, which Plaintiffs maintain calls into question the motives and credibility of the Defendants.[26]

Considering the foregoing jurisprudence and the arguments and evidence offered by the Parties, the Court finds that resolution of Plaintiffs' LUTPA claim depends in large part on the credibility of the witnesses, which the Court finds can best be determined by the Court during live testimony at trial and after cross-examination.[27] Accordingly, Defendants' *Joint Motion for Partial Summary Judgment on Louisiana Unfair Trade Practices Act Claim*[28] is DENIED.

## III. PEREMPTION/*RES JUDICATA*/ISSUE PRECLUSION

In addition to their substantive motion to dismiss Plaintiffs' LUTPA claims, Defendants have asserted an additional motion arguing that Plaintiffs' LUTPA claims should be dismissed because they are preempted and under the doctrines of *res judicata* or issue preclusion.

### A. Peremption

Defendants maintain that private actions under LUTPA are subject to a one-year peremptive period "running from the time of the transaction or act which gave rise to the cause of action."[29] Defendants argue that Duplessis, and by extension HRGC, had

---

[25] *Id.* at 22.
[26] *Id.* at 24.
[27] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002)("The fact finder is entitled to hear [the expert's] testimony and decide whether it should accept or reject the testimony after considering all factors that weigh on credibility, including whether the predicate facts on which [the expert] relied are accurate.").
[28] Rec. Doc. No. 86.
[29] La. R.S. 51:1409(E).
52441

knowledge of the alleged bad acts giving rise to the LUTPA claim in October of 2016.[30] As it is undisputed that Plaintiffs did not file the LUTPA claim against Morris Entities until April 13, 2018, long after the one-year peremptive period had expired, Defendants contend LUTPA claims brought against Morris Entities should be dismissed.[31] Defendants further argue that the continuing tort theory does not apply to peremption; therefore, Plaintiffs' filing suit against Baker is irrelevant to the timeliness of the LUTPA claims asserted against Morris Entities.[32]

In opposition, Plaintiffs argue that there has been confusion as to whether LUTPA is subject to a peremptive or prescriptive time period; thus, the Louisiana Legislature issued a clarifying amendment, La. R.S. 51:4109(E), which states: "[t]he action provided by this Section shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action."[33] Plaintiffs contend this amendment leaves no doubt that the time period applied to LUTPA is prescriptive and is, therefore, subject to multiple doctrines that delay its commencement and/or running.[34] Further, Plaintiffs maintain that the LUTPA violations include acts committed by Baker and the Morris Entities well after the March 15, 2017 awarding of the lease to Bridgeview, and such violations continue today.[35]

Because suit against one defendant timely interrupts prescription against all defendants who are solidarily liable, and because Baker and Morris are solidarily liable in

---

[30] R. Doc. 96-1 at 9-10.
[31] *Id.* at 9.
[32] R. Doc. 174 at 3.
[33] R. Doc. 149 at 16.
[34] *Id.*
[35] *Id.* at 17.
52441

this matter, Plaintiffs argue that the suit filed against Baker on March 23, 2017, well within the prescriptive period, is timely against Morris Entities and should not be dismissed.[36] Alternatively, Plaintiffs contend the continuing tort doctrine applies in this case because the LUTPA limitations period is prescriptive, so the prescriptive period may be suspended when a defendant's violations are continuing.[37] The Plaintiffs claim that the Defendants' violative conduct relating to the continued use of HRGC's proprietary information continues today.[38]

In their *Reply*, Defendants impugn Plaintiffs' argument that the August 2018 amendment to La. R.S. 51:1409(E) clarifies that LUTPA claims are subject to a one-year prescriptive period, arguing that "Plaintiffs attempt sleight of hand,"[39] and, citing La. R.S. 24:201, *et seq.*, stating that the Louisiana State Law Institute made only "stylistic changes" rather than substantive changes to the statute.[40] However, this Court recently considered the effect of the August 2018 amendment to the statute and concluded that Plaintiffs' argument is correct.

In *Trinity Medical Services, L.L.C. v. Merge Healthcare Solutions, Inc.*,[41] this Court considered the same arguments asserted in the present matter regarding the 2018 amendment to La. R.S. 51:1409(E). The Court explained how both Louisiana federal courts and state appellate courts have interpreted this statute prior to the 2018 Amendment:

---

[36] *Id.*
[37] *Id.* at 18.
[38] *Id.*
[39] Rec. Doc. No. 174 at 1.
[40] Defendants do not provide a specific provision for this quote.
[41] No. 17-592-JWD-EWD, 2018 WL 3748399 (M.D. La. Aug. 7, 2018).
52441

> Classification of the time period imposed on LUPTA claims as a peremptive period instead of a prescriptive period is significant because prescriptive periods may be extended by doctrinal devices, such as *contra non valentem* and the "continuing tort" theory. According to La. R.S. § 51:1409(E), there is a one year prescriptive period on LUPTA claims.
>
> However, this statute has been interpreted by several Louisiana courts as imposing a peremptive period. *See e.g., Glod v. Baker*, 899 So. 2d 642 (La. App. 3 Cir. 2005); *Capital House Pres. Co. v. Perryman Consultants, Inc.*, 725 So. 2d 523 (La. App. 1 Cir. 1998); *Canal Marine Supply, Inc. v. Outboard Marine Corp. of Waukegan, Ill.*, 522 So. 2d 1201 (La. App. 4 Cir. 1988). This interpretation of La. R.S. § 51:1409(E) originates in much older case law holding that if a statute creating a right also provides the time period for that right to be exercised, the period is considered a peremptive one. *See Guillory v. Avoyelles R.R. Co.*, 28 So. 899 (La. 1901).[42]

The Court then noted the recent amendment and explained the distinction between peremptive and prescriptive periods, particularly regarding tolling doctrines:

> The Louisiana Legislature has recently revised La. R.S. § 51:1409(E), effective August 1, 2018, to read as follows: "The action provided by this Section shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action." 2018 La. Sess. Law Serv. Act 337 (H.B. 759) (West). The change may be an attempt to resolve and clarify the peremptive versus prescriptive dispute among Louisiana courts regarding this statute, which the Louisiana Supreme Court previously declined to resolve in *Miller*, 991 So. 2d at 456. If the time limit imposed by the statute is, in fact, a peremptive period, the doctrine of *contra non valentem* does not apply to LUPTA claims. *See Reese*, 684 F. Supp. 2d at 801; *Dominion Expl. & Prod., Inc. v. Waters*, 972 So. 2d 350, 362 (La. App. 4 Cir. 2007). On the other hand, if the time limit imposed by La. R.S. § 51:1409(E) is a prescriptive period, as the statute itself indicates (and as the recent legislative changes to this statute indicate), then the doctrine of *contra non valentem* would apply to LUPTA claims.
>
> With regard to prescriptive periods, the doctrine of *contra non valentem* includes a "discovery rule," which stipulates that prescription does not begin to run until the injured party discovers or should have discovered the facts upon which the cause of action is based through reasonable diligence. *See Allstate Ins. Co. v. Fred's Inc.*, 18 So. 3d 172, 178 (La. App. 2 Cir. 2009),

---

[42] *Id.* at *8 (footnotes omitted).

rev'd, 25 So. 3d 821 (La. 2010) (holding that the Second Circuit erroneously found that the doctrine of *contra non valentem* applied to the facts of the case because the record of the plaintiff's actions indicated a lack of diligence, which should have precluded the Second Circuit from applying the doctrine).

Additionally, the prescriptive period may be delayed by a "continuing tort" theory. Under this theory, when the cause of the plaintiff's injury is a continuous one giving rise to successive damages, prescription does not begin to run until the conduct which caused the damages ends. *See Crump v. Sabine River Auth.*, 737 So. 2d 720, 726 (La. 1999); *Bustamento v. Tucker*, 607 So. 2d 532, 543 n.8 (La. 1992); *Reese*, 684 F. Supp. 2d at 802. In other words, "'[a] continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original wrongful act.'" *Miller*, 991 So. 2d at 456 (citing *Crump*, 737 So. 2d at 728).[43]

The Court ultimately concluded that La. R.S. 51:1409(E) "contemplates a prescriptive period,"[44] and explained further that the amended statute should apply retroactively as it is procedural in nature:

> Because the change to La. R.S. § 51:1409(E) is only recently effective, and the amendment does not indicate expressly whether the statute applies retroactively, the Court must consider whether the amended statute should apply retroactively. Louisiana Civil Code art. 6 indicates that laws which are procedural in nature apply both prospectively and retroactively, unless there is a legislative expression to the contrary. *See also Jacobs v. City of Bunkie*, 737 So. 2d 14 (La. 1999).
>
> The Fifth Circuit and the Louisiana Supreme Court have noted that, in Louisiana, prescriptive periods are generally treated as procedural laws. *See e.g., Holt v. State Farm Fire and Cas. Co.*, 627 F.3d 188, 192 (5th Cir. 2010) (citing *Chance v. Am. Honda Motor Co.*, 635 So. 2d 177, 178 (La. 1994); *see also Lott v. Haley*, 370 So, 2d 521, 523 (La. 1979). Prescriptive periods are considered remedial, or procedural, in nature, and therefore are generally accorded retroactive application. *See Ebinger v. Venus Const. Corp.*, 65 So. 3d 1279, 1285 (La. 2011) (citing *Lott*, 370 So. 2d at 523)). However, there are two exceptions to this general rule. First, when the retroactive application would "strip a party of a vested right," or second, when retroactive application would "revive an already prescribed cause of action." *Holt*, 327 F.3d at 193 (citing *Lott*, 370 So. 2d at 523-24).

---

[43] *Id.* at *8 -*9.
[44] *Id.* at *9.
52441

Here, neither of the exceptions to the general rule of retroactivity apply. First, Plaintiffs would not be stripped of a vested right by retroactive application of the statute. The changes to the statute merely clarify the old law rather than change it substantively. Second, the retroactive application of La. R.S. § 51:1409(E) would not revive an already prescribed cause of action. Under both the plain and revised statutory language, Plaintiffs' LUPTA claims would not have prescribed.

The new statutory language does not change the prescriptive period at issue in this case; instead, it simply reiterates that the time period at issue is a liberative prescriptive period rather than a peremptive period (as the old statute had been construed in spite of its plain language). Thus, the general rule of retroactive application for statutes contemplating prescriptive periods is appropriate in this case. As a result, the analysis of the retroactivity of the amended statute weighs heavily in favor of considering the time period as a prescriptive one. Therefore, the Court finds that La. R.S. § 51:1409(E) contemplates a one-year prescriptive period.[45]

At least two district judges in the Western District of Louisiana agreed with this Court's holding in *Trinity Medical Services*. In *Tripp v. Pickens*,[46] the court addressed the same issue following the 2018 amendment to the statute and noted that this Court "has held that the 2018 amendment is procedural so, under Louisiana retroactivity principles, the clarified prescription period and related doctrine of continuing tort would apply to even claims that preexisted the amendment.[47] That opinion is persuasive."[48] In *Jeanes v. McBride*,[49] the court explained:

> "In Louisiana, statutes of limitation are generally treated as procedural laws."
>
> In this case, the legislative history of the 2018 LUTPA amendment sheds no light on whether the amendment was meant to have retroactive effect. As a result, the Court follows the general principle that statutes regarding prescription and peremption are procedural and have retroactive effect. The

---

[45] *Id.* (footnote omitted).
[46] No. 17-0542, 2018 WL 6072027 (W.D. La. Nov. 2, 2018).
[47] *Id.* at *5 (citing *Trinity Med. Servs., L.L.C.*, 2018 WL 3748399, *9).
[48] *Id.*
[49] No. 16-1259, 2019 WL 2387863 (W.D. La. June 4, 2019).
52441

Court holding the 2018 LUTPA amendment is interpretive and has retroactive effect.

This holding is consistent with the holding of the Louisiana Third Circuit Court of Appeal in *Congregation of Immaculate Conception Roman Catholic Church of Par. of Calcasieu v. Sam Istre Constr., Inc.* In that case, the court held the 2018 amendment to LUTPA suggests "the legislature always intended the time period to be prescriptive" and that the amendment "merely clarifies and interprets an existing law." The court found that the amendment did not change the law, but rather clarified that LUTPA claims have always been subject to liberative prescription, not peremption. This holding also is consistent with Judge deGravelles' holding in *Trinity Med. Servs., L.L.C. v. Merge Healthcare Sols., Inc.*[50]

This Court noted in *Felder's Collision Parts, Inc. v. General Motors Co.* that "La. Civ.Code art. 2324 provides the basis for solidary liability under Louisiana law."[51] This article provides, in pertinent part: "He who conspires with another person to commit an intentional and willful act is answerable, *in solido*, with that person for the damage caused by that act." Plaintiffs have alleged that Baker and Morris engaged in a conspiracy to cause their damages;[52] therefore, Plaintiffs' suit filed against Baker interrupted prescription as to Morris as well.[53]

### B.  *Res Judicata*/Issue Preclusion

Defendants also contend that Plaintiffs are barred, at least in part, from filing certain claims against certain Defendants in this suit because the Defendants prevailed in a state court suit based on the same transactions/occurrence that is the subject of this lawsuit. Plaintiffs previously filed suit against the LED and Sheriff Cazes, and Bridgeview

---

[50] *Id.* at *12 - *13 (citations omitted).
[51] No. 12-646-JJB-SCR, 2014 WL 1652719, *6 (M.D. La. Apr. 23, 2014).
[52] *See First Amended Complaint*, Rec. Doc. No. 148, ¶¶ 23, 24, 26-28, 30, 32, 33, and 39.
[53] The Court finds in the alternative that, viewing the evidence in the light most favorable to Plaintiffs as the Court is required to on a summary judgment, there is at least an issue of fact regarding the continuing tort doctrine's applicability to this case.
52441

intervened in the suit. Ultimately, judgment was entered against HRGC and GILC finding that the LED properly terminated the GILC/LED lease.[54] The judgment declared "the March 5, 2017 Lease of Commercial Property between the [LED] and [Bridgeview] to be valid and enforceable pursuant to Title 41 of the Louisiana Revised Statutes."[55] Defendants argue there is no doubt that the judgment is valid and final, and the Parties are not required to have the same physical identity but, rather, must appear in the same "quality or capacity" in both suits.[56] Defendants state that GILC and HRGC were parties to the previous lawsuit, and Bridgeview, a single member LLC owned by Keith Morris - the majority shareholder of Sugar West, Inc. - was a party to the previous lawsuit.[57] Therefore, Defendants claim that the Morris Entities, through Bridgeview, can be considered to have appeared in the prior lawsuit as well as the current one.[58]

Defendants maintain that this lawsuit arises out of the same transaction/occurrence which was the subject matter of the first action, *i.e.*, bad acts by Baker, Morris, and Sheriff Cazes with respect to the termination of the LED/GILC lease and subsequent award of a lease to Bridgeview.[59] Defendants claim that the allegations cover the same acts over the same relevant time period, and Plaintiffs knew all pertinent facts at the time of the previous trial and, therefore, have no new claims that did not already exist when they filed the state court lawsuit.[60] Because all of Plaintiffs' claims against the Morris Entities arise out of the same transactions and occurrences which

---

[54] R. Doc. 96-1 at 11 (*citing* Exhibit K, Hearing Transcript).
[55] *Id.* (*citing* Exhibit L, Judgement).
[56] *Id.* at 12 (*quoting* Berrigan v. Deutsch, Kerrigan & Stiles, LLP, 2001-0612, p.6 (La.App. 4 Cir. 1/2/2002), 806 So.2d 163, 167).
[57] *Id.* at 12-13.
[58] *Id.* at 13.
[59] *Id.*
[60] *Id.*
52441

occurred prior to the judgment in the previous lawsuit, Defendants argue Plaintiffs' claims are therefore subject to *res judicata* and should be dismissed.[61] Specifically, Defendants argue that HRGC and GILC "have already had their day in court and lost twice on two key issues: lease termination and public bid process."[62] Thus, Defendants urge the Court that any claims rooted in the termination of LED/GILC lease should be dismissed on the basis of issue preclusion.[63] Likewise, any claims rooted in the public bid process and award of the lease to Bridgeview should likewise be dismissed.[64]

Plaintiffs oppose this motion on several grounds. First, Plaintiffs maintain that the parties to this suit are not the same as those to the previous suit because Bridgeview was the only Morris entity to ever make an appearance in the previous suit, and then only as an intervenor. Also, neither the LED nor Sheriff Cazes, the defendants in the previous suit, are parties in this case. Further, Morris and Sugar West were never parties to the previous lawsuit any capacity; thus, no claims asserted against them in this litigation are barred by *res judicata*.

Plaintiffs also argue that the "thing demanded" in this litigation is not the same as in the previous lawsuit, and none of the causes of action are the same. In the previous lawsuit, the "thing demanded" was an injunction nullifying the award of the first lease by the LED due to its failure to comply with the Public Bid Law. In this litigation, Plaintiffs do not seek to invalidate the lease to Bridgeview; rather, herein, Plaintiffs seek damages from Baker and the Morris Entities based on the alleged unlawful conduct that began

---

[61] *Id.* at 13-14.
[62] *Id.* at 14.
[63] *Id.* at 15.
[64] *Id.*

before the bid process and continued long after. Additionally, the previous lawsuit was brought pursuant to alleged violations of the Public Bid Law. In this litigation, Plaintiffs have asserted multiple causes of action never asserted in the previous lawsuit and based on many facts which had not yet occurred at that time. Therefore, Plaintiffs urge the Court to deny Defendants motion on this issue as the claims asserted in this litigation against Morris Entities are not barred by *res judicata* because they are not the same claims and are not based on the same underlying facts.

Plaintiffs also maintain that no claims herein are barred by issue preclusion. Because the parties in the previous lawsuit and this case are not identical, the issues in the previous lawsuit and this litigation are not identical, and the issues in this lawsuit were never litigated as they were irrelevant to the judgment rendered in the previous lawsuit, no issues in the present case are barred by issue preclusion. The issues in this suit are based on the alleged Morris Entities' unlawful actions taken against the Plaintiffs and their alleged unlawful competition and deceptive trade practices. The previous suit addressed wholly unrelated issues, such as the LED's compliance with the Public Bid Law and whether Plaintiffs breached their lease by failing to remove all their property when they vacated the lease. Thus, the claims in this lawsuit bear no relation to the judgment in the previous lawsuit and are not subject to dismissal based on issue preclusion.

The Supreme Court has held that, "under the Full Faith and Credit Act a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give."[65] "It has long been established that § 1738 does not allow federal

---

[65] *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986); 28 U.S.C. § 1738.
52441

courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."[66]

In Louisiana, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review.[67] Louisiana Revised Statutes, Title 13, Section 4231, provides as follows:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment;
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action;
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

In *Cavalier v. Nationstar Mortgage, LLC*,[68] this Court noted the distinction between issue preclusion and claim preclusion under the doctrine of *res judicata*:

> In 1990, the Louisiana *res judicata* statute was amended to change the law by adopting the principle of issue preclusion.[69] The Louisiana law of *res judicata* now provides for both claim preclusion and issue preclusion.[70]

---

[66] *Id.* at 523 (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82 (1982)); *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).
[67] La. R.S. 12:4231.
[68] No. 14-702-JWD-SCR, 2015 WL 4429247 (M.D. La. July 20, 2015).
[69] *Id.* at *2 (citing La.Rev.Stat. Ann. § 12:4231, cmt. (b)(1990)).
[70] *Id.* (citing La.Rev.Stat. Ann. § 12:4231, cmt. (b)(1990)).
52441

Claim preclusion precludes multiple actions arising from the same transaction or occurrence.[71] Issue preclusion precludes relitigation of issues actually adjudicated and essential to the judgment in a prior suit between the parties on a different cause of action.[72] The requirements for a claim or an issue to be *res judicata* are that there is a valid and final judgment and that the judgment was issued in a case between the same parties, as in the instant case.[73] For an issue to be precluded, the issue must have been actually litigated and determined in the previous action and that determination must have been essential to the judgment in the previous action.[74] A valid judgment is one that was rendered by a court with jurisdiction over subject matter and over parties, and proper notice must have been given.[75] The judgment must also be a final judgment, that is, a judgment that disposes of the merits in whole or in part.[76]

Applying the law to the circumstances presented herein, Defendants' motion based on *res judicata* must be denied. Defendants have failed to demonstrate the above requirements for claim or issue preclusion. While there are clearly overlapping underlying facts for both lawsuits, it is quite a stretch to claim that a lawsuit seeking injunctive relief under the Public Bid Law is "identical" to this lawsuit, based almost entirely on unfair trade practices under federal and state law. A state court judgment denying injunctive relief and finding that some of the Defendants in this litigation did not violate the Public Bid Law in obtaining the lease in no way touches on the issues presented herein, whether some of the same Defendants engaged in deceptive trade practices under federal and state law. The two lawsuits were brought under different laws, for different damages, and require the courts to address completely different standards and elements for the claims presented. Accordingly, the Defendants' *Motion for Partial Summary Judgment on*

---

[71] *Id.* (citing La.Rev.Stat. Ann. § 12:4231, cmt. (a)(1990)).
[72] *Id.* (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436 (5th Cir. 2000)(citing *Kaspar Wire Works, Inc., v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir.1978))).
[73] *Id.* (citing La. R.S. 13:4231).
[74] *Id.* (citing La. R.S. 13:4231(3)).
[75] *Id.* (citing La.Rev.Stat. Ann. § 13:4231, cmt. (d)(1990)).
[76] *Id.* (citing La.Rev.Stat. Ann. § 13:4231, cmt. (d)(1990)).

52441

*Louisiana Unfair Trade Practices Act Claim and Res Judicata and Issue Preclusion*[77] is DENIED.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' *Joint Motion for Partial Summary Judgment on Louisiana Unfair Trade Practices Act Claim*[78] and the *Motion for Partial Summary Judgment on Louisiana Unfair Trade Practices Act Claim and Res Judicata and Issue Preclusion*[79] are hereby DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on July 18, 2019.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[77] Rec. Doc. No. 96.
[78] Rec. Doc. No. 86.
[79] Rec. Doc. No. 96.
52441