# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

HUNTERS RUN GUN
CLUB, LLC, ET AL.

CIVIL ACTION

17-176-SDD-EWD

VERSUS

EDDIE D. BAKER

## RULING

This matter is before the Court on the *Joint Motion for Partial Summary Judgment on Claims under Louisiana Law*[1] filed by Defendants Eddie D. Baker ("Baker"), Sugar-West, Inc. ("Sugar-West"), Bridgeview Gun Club, LLC ("Bridgeview"), and Keith Morris ("Morris" or "Morris Entities") (collectively, "Defendants"). Plaintiffs, Hunters Run Gun Club, LLC ("HRGC") and Great International Land Company, LLC ("GILC")(collectively "Plaintiffs") have filed *Oppositions*[2] to the motion.

## I.    FACTUAL BACKGROUND

This case arises out of claims that the Defendants conspired with the Law Enforcement District of the Parish of West Baton Rouge ("LED") by terminating a lease previously belonging to a HRGC affiliate for a shooting facility and gun club run by HRGC and then leasing the facility to a HRGC competitor – Bridgeview – which is currently owned and controlled by Morris.[3] Plaintiffs specifically allege that the LED notified HRGC

---

[1] Rec. Doc. No. 90.
[2] Rec. Doc. Nos. 168 & 193.
[3] Rec. Doc. No. 63-1 at 1.
Document Number: 52613

that it would not renew its lease with HRGC as operator of the gun club shortly after HRGC terminated the employment of its former manager, Defendant Baker, in August 2016. About three months after Baker's termination, in November 2016, Plaintiffs contend that the LED, a public entity, tried to lease the gun club to Morris, notwithstanding that Morris did not submit the highest bid to the LED for the lease. Plaintiffs successfully obtained injunctive relief against the LED in state court for the LED's failure to comply with Louisiana's bid law. Thereafter, the LED published a bid request, which resulted in lease of the gun club to Bridgeview. Plaintiffs allege that this conspiracy between Morris, Baker, Bridgeview and the LED resulted in damages to Plaintiffs.[4]

## II.    LAW & ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[6]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[7]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence

---

[4] *Id.* at 1-2.
[5] Fed. R. Civ. P. 56(a).
[6] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[7] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
Document Number: 52613

of a genuine issue concerning every essential component of its case.'"[8]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[9]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[10]  All reasonable factual inferences are drawn in favor of the nonmoving party.[11]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[12]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[13]

### B.  Tortious Interference with Business Relations

In *Marshall Investments Corporation v. R.P. Carbone Company,*[14] the district court for the Eastern District of Louisiana aptly explained the applicable legal standards governing this claim:

Louisiana courts have recognized a cause of action for tortious interference

---

[8] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

[9] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

[10] *Pylant v. Hartford Life and Accident Insurance Company,* 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[11] *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir. 1985).

[12] *RSR Corp. v. International Ins. Co.,* 612 F.3d 851, 857 (5th Cir. 2010).

[13] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.,* 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson,* 477 U.S. at 249).

[14] No. 05–6486, 2006 WL 2644959, *5 (E.D.La. Sep. 13, 2006).

with business relations. *Junior Money Bags, Ltd. v. Segal,* 970 F.2d 1, 10 (5th Cir.1992) (citations omitted); *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 601 (5th Cir.1981). The cause of action for tortious interference with business derives from article 2315 of the Louisiana Civil Code. [La. Civ.Code] art. 2315(a) ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."); *Dussuoy,* 660 F.2d at 601. Tortious interference is based on the principle that the right to influence others not to deal is not absolute. *Junior Money Bags,* 970 F.2d at 10 (citing *Ustica Enters., Inc. v. Costello,* 434 So.2d 137, 140 (La.Ct.App.1983). Louisiana law protects the businessman from 'malicious and wanton interference,' though it permits interferences designed to protect legitimate interests of the actor. *Dussouy,* 660 F.2d at 601. A plaintiff bringing a claim for tortious interference with business must ultimately show "by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff." *Junior Money Bags,* 970 F.2d at 10 (quoting *McCoin v. McGehee,* 498 So.2d 272, 274 (La.Ct.App.1986). It is not enough to allege that a defendant's actions affected plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party. *See Nowling v. Aero Servs. Int'l Inc.,* 752 F.Supp. 1302, 1312 n. 7 (E.D.La.1990); *Ustica,* 434 So.2d at 140.

Louisiana jurisprudence, however, has viewed this cause of action with disfavor. *JCD Mktg. Co. v. Bass Hotels and Resorts, Inc.,* 812 So.2d 834,841 (La.Ct.App. 2002). "Louisiana courts have limited this cause of action by imposing a malice element, which requires that the plaintiff show the defendant acted with actual malice." *Id.*; *Dussouy,* 660 F.2d at 602. "Although its meaning is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings. In fact, there appear to be no reported cases in which anyone actually has been held liable for the tort." George Denegre, Jr., et al., *Tortious Interference and Unfair Trade Claims: Louisiana's Elusive Remedies for Business Interference,* 45 Loy. L.Rev. 395, 401 (1999); *see also Junior Money Bags,* 970 F.2d at 11(noting that tortious interference with business is a "very limited form of recovery" in Louisiana). In order to sustain a claim for tortious interference with business relations, actual malice must be pleaded in the complaint. *Dussouy,* 660 F.2d at 602.

Defendants move for summary judgment on this claim, arguing that Sheriff Cazes had the authority to terminate the lease, and the evidence demonstrates that he did so due to concerns about the manner in which HRGC was being run and maintained.

Further, Sheriff Cazes attested to the fact that he had no discussions with Baker regarding the lease, and that neither Baker nor Morris suggested or requested that Sheriff Cazes or the LED terminate the lease.[15]  Thus, Defendants contend there is no evidence that Baker or Morris influenced the Sheriff in any way, much less proof of malicious intent. Defendants maintain that the record evidence demonstrates only that Sheriff Cazes had long been dissatisfied with HRGC, even before Baker became the manager.[16]  Thus, Defendants argue, Sheriff Cazes, the only person with authority to terminate the lease, has attested under oath that the decision to terminate the HRGC lease was an economic business decision only, and not related to Baker.

Plaintiffs oppose Defendants' motion, arguing that the presence of malice under this claim is best left for the trier of fact.[17]  Plaintiffs also maintain that they have presented summary judgment evidence demonstrating issues of fact for trial.   Plaintiffs cite the testimony of several witnesses who claim that Baker intentionally "ran the club into disrepair to bring about a change [of] ownership of the club."[18]  Plaintiffs also offer the testimony of former HRGC employee Bethany Walker ("Walker"), who testified that she witnessed frequent conversations between Baker and Morris and overheard at least one

---

[15] Rec. Doc. No. 89-13, *Affidavit* of Michael Cazes, ¶¶ 8-9.

[16] Rec. Doc. No. 89-9, Deposition of David Allen Sikes, p. 213, l. 13 – p. 214, l. 2; p. 212, l. 11 – p. 213, l. 4.

[17] Rec. Doc. No. 168 at 16 ("As an initial matter, this is not a proper basis for summary judgment as '[i]t is hornbook law that summary judgment is not a substitute for a trial on the merits, and is inappropriate for judicial determination of **subjective facts**, **such as motive**, intent, good faith, knowledge and **malice**, that calls for credibility determinations and the weighing of testimony.'" *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 2014-0323 (La.App. 4 Cir. 10/1/14, 10), 151 So.3d 670, 677, *writ denied*, 2014-2241 (La. 1/9/15), 157 So.3d 1110 (Plaintiffs' emphasis).

[18] *Id.* at 16-17 (citing Exhibit 20 (Sikes Deposition) at 14:13-15:7, 17:5-18:2, 20:9-21:24, 28:17-29:7, 49:6-51:3, 51:18-21; Exhibit 19 (Bethany Deposition) at 29:15-19, 30:16-22, 33:2-4; Exhibit 21 (HRGC001791); Exhibit 22 at HRGC000156, 181, 195, 209, 237, 241, 288; Exhibit 24 (Campbell Affidavit) at ¶¶ 3, 6-7).

Document Number: 52613

discussion specifically about the Sheriff's intent to terminate the Hunters Run lease.[19]
Walker also testified that Baker openly discussed his expectation that HRGC was closing
and that a change in ownership was coming well before the lease was terminated.[20]  Thus,
Plaintiffs maintain they have presented sufficient summary judgment evidence to
demonstrate factual disputes regarding the motive, intent, and involvement of Baker and
Morris in the termination of the lease.

The Court finds that there are material issues of fact in dispute regarding this claim.
While Louisiana law is clear that finding liability for tortious interference with business
relations is disfavored, it also mandates that issues of credibility, motive, and intent are
best left to the trier of fact, in this case, the Court.   Because liability on this claim will
largely turn on the credibility of the witnesses in this matter, the Court denies Defendants'
motion on this claim as the Court is in a better position to make these credibility
determinations after the presentation of live testimony.

### C.      Exceeding Authority as Mandatary

Plaintiffs claim that Baker exceeded his authority as a mandatary of HRGC and
GILC and is, therefore, liable under La. C.C. art. 3008, which provides that: "If the
mandatary exceeds his authority, he is answerable to the principal for resulting loss that
the principal sustains. The principal is not answerable to the mandatary for loss that the
mandatary sustains because of acts that exceed his authority unless the principal ratifies
those acts."   Louisiana law provides that, "[a] mandate is a contract by which a person,
the principal, confers authority on another person, the mandatary, to transact one or more

---

[19] Rec. Doc. No. 168-3 (Exhibit 19 (Bethany Deposition) at 60:20-61:1, 61:5-8, 121:5-25
[20] *Id.* (Exhibit 19 (Bethany Deposition) at 61:20-62:2).
Document Number: 52613

affairs for the principal."[21]  "A mandatary who contracts in the name of the principal within the limits of his authority does not bind himself personally for the performance of the contract."[22]  As explained by one court, "[u]nder well-settled principles of the Louisiana law of mandate, [employees/agents] cannot be held personally liable for acts performed within the scope of their agency relationship with [their employer]."[23] However, "[a] mandatary who exceeds his authority is personally bound to the third person with whom he contracts, unless that person knew at the time the contract was made that the mandatary had exceeded his authority or unless the principal ratifies the contract."[24]

The Fifth Circuit has held that, "the more extensive the control the principal exercises over the mandatary, the more likely the employment relationship exists."[25] Notably, while a mandatary, who has a fiduciary duty, is bound after termination, an employee retains a right to compete so long as it does not offend public policy.[26]

Plaintiffs claim that Baker exceeded his role as manager and mandatary of HRGC by using HRGC's proprietary information to obtain an unfair advantage and by conspiring with Sheriff Cazes, Morris, and the LED to drive HRGC out of business by "ensuring its lease was terminated."[27]  Defendants move for summary judgment on the following grounds.  First, Defendants maintain that there was no relationship between Baker and GILC; thus, no mandatary relationship existed between the two.  Second, the testimony

---

[21] La. C.C. art. 2989.
[22] La. C.C. art. 3016.
[23] *Technical Resource Services, Inc. v. Shell Exploration & Prod. Co.*, 2010 WL 890533, at *4 (E.D. La. Mar. 8, 2010) (citing La. Civ. Code arts. 3016, 3019, 2320; *Picquet v. Amoco Production Co.*, 513 F.Supp. 938, 939 (M.D. La. 1981)).
[24] La. C. C. art. 3019.
[25] *Newcomb v. North East Ins. Co.*, 721 F.2d 1016 (5th Cir. 1983).
[26] *Novelaire Techs., L.L.C. v. Harrison*, 08-157 (La. App. 5 Cir. 8/19/08), 994 So.2d 57, 64.
[27] Rec. Doc. No. 1, ¶¶ 87-90.
Document Number: 52613

of Duplessis undermines any contention that Baker's employment status rose to the level of mandatary as opposed to merely being an employee. Duplessis confirmed that Baker had no check-writing authority and could not make deposits for HRGC.[28] Further, if Baker wanted to spend any money on behalf of HRGC, he was required to first get permission from Duplessis.[29] Finally, as Baker was not an LLC member or non-member manager of HRGC, Defendants maintain he was not a mandatary on behalf of HRGC.

Plaintiffs oppose this motion and argue that Baker was both a mandatary and fiduciary of HRGC. Plaintiffs acknowledge that Baker's authority was limited in certain aspects; however, they contend he also had authority to act for and bind HRGC in numerous aspects and enjoyed a wide range of responsibilities related to operation of the club. Plaintiffs cite to the *Affidavit* of Duplessis wherein he attests to Baker's responsibilities as manager of the club.[30] Plaintiffs claim that Baker was the general manager of the club, and he oversaw all other employees and was responsible for a substantial scope of duties which required him to exercise substantial discretion. Plaintiffs also maintain that because Baker had a Hunters Run credit card to make routine purchases for the club, his status was a mandatary.

The Court lacks sufficient evidence on summary judgment to determine whether Baker acted as a mandatary for HRGC and/or GILC. The Court will deny Defendants' motion on this issue and make this determination at trial.

---

[28] Rec. Doc. No. 126-2, Exhibit B, Duplessis 2017, p. 131, ll. 9-19.
[29] *Id.* at p. 132, ll. 17-20.
[30] Plaintiffs cite the Duplessis *Affiadvit* as Exhibit 2; however, the Court could not locate this document within Rec. Doc. No. 168-2,labeled Exhibit 1-15. Only one document in this grouping is identified as Exhibit 1, and no Affidavit is located in this 221 page exhibit.

## D.      Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty under Louisiana law include: (1) the existence of a fiduciary duty, (2) a violation of that duty by the fiduciary, and (3) damages resulting from the violation of duty.[31] "[W]hether a fiduciary duty exists, and the extent of that duty, depends upon the facts and circumstances of the case and the relationship of the parties."[32]   Employees and mandataries owe duties of fidelity and loyalty to their employers and principals.[33] "An employee owes his employer a duty to be loyal and faithful to the employer's interest in business."[34]   An employee is duty-bound not to act in antagonism or opposition to the interest of his employer.[35]

Louisiana courts have determined that, under circumstances where an employee solicited customers and copied confidential customer lists of his employer while still employed, a breach of fiduciary duty may be found.[36]   However,

> [w]ithout a restrictive agreement, at the termination of her employment, an employee can go to work for a competitor or form a competing business. Even before termination, the employee can seek other work or prepare to compete, except that she may not use confidential information acquired by her from her previous employer.... [A]n employee's involvement in forming

---

[31] *U.S. Small Business Admin. v. Beaulieu*, 75 Fed.Appx. 249, 252 (5th Cir. 2003) (citing *Brockman v. Salt Lake Farm Partnership*, 33,938 (La. App. 2 Cir. 10/04/00), 768 So.2d 836, 844, *writ denied*, 2000-C-3012 (La. 12/15/00), 777 So. 2d 1234); *Omnitech International, Inc. v. The Clorox Co.*, 11 F.3d 1316, 1330 and n. 20 (5th Cir.), *cert. denied*, 513 U.S. 815 (1994)

[32] *Scheffler v. Adams and Reese, LLP*, 2006–1774 (La. 02/22/07); 950 So.2d 641, 647.

[33] *Texana Oil & Refining Co. v. Belchic*, 90 So. at 527; Neal v. Daniels, 47 So.2d 44, 45 (1950); *Harrison v. CD Consulting, Inc.*, 05-1087 (La. App. 1 Cir. 05/05/06), 934 So.2d 166, 170; *Cenla Physical Therapy & Rehabilitation Agency, Inc. v. Lavergne*, 657 So.2d at 177; *Odeco Oil & Gas Co. v. Nunez*, 532 So.2d at 462.

[34] *ODECO Oil & Gas Co. v. Nunez*, 532 So.2d at 463 (quoting *Dufau v. Creole Engineering, Inc.*, 465 So.2d 752, 758 (La. App. 5 Cir.), *writ denied*, 468 So.2d 1207 (La. 1985)).

[35] *Neal v. Daniels*, 47 So.2d at 45 (quoting *Texana Oil & Refining Co. v. Belchic*, 90 So. at 527); *Harrison v. CD Consulting, Inc.*, 934 So.2d at 170.

[36] *See, e.g., Cenla Physical Therapy & Rehab. Agency Inc. v. Lavergne*, 657 So.2d at 177 (finding genuine issue of material fact whether defendants breached fiduciary duty to employer by copying patient lists); *Huey T. Littleton Claims Service, Inc. v. McGuffee*, 497 So.2d 790, 794 (La. App. 3 Cir., 1986) (finding defendant breached his fiduciary duty by soliciting former employer's customers and copying employer's customer list).

Document Number: 52613

a competitive entity, including the solicitation of business and the hiring of employees, prior to terminating her current employment relationship, is not an unfair trade practice. [An employee has] a right to explore alternatives to her current employment and to change jobs. She had no duty or obligation to disclose to [her employer] her intent to seek other employment.[37]

Therefore, "[i]t is not a breach of fiduciary duty for former employees to solicit the clients of their former employers as long as they do so based on their memory, experience, or personal contacts, rather than through the use of confidential information of the former employer."[38]  Thus, merely planning to compete—even while employed—does not necessarily constitute a breach of fiduciary duty.

"[H]istorically, an employee's breach of his fiduciary duty to his employer has been contemplated in instances when an employee has engaged in dishonest behavior or unfair trade practices for the purpose of his own financial or commercial benefit.... Thus, the question of breach of fiduciary duty or loyalty as an employee collapses into the question of whether the employee's actions constitute unfair trade practices...."[39]

As set forth above, whether Baker breached a fiduciary duty to HRGC and/or GILC is disputed issue of fact that the Court cannot resolve on summary judgment.  Further, the Court finds, based on the above language, that the breach of fiduciary duty claim presented herein is essentially the same as that arising under the LUTPA.

---

[37] *United Group of Nat. Paper Distributors, Inc. v. Vinson*, 27,739 (La. App. 2 Cir. 01/25/96), 666 So.2d 1338, 1348, *writ denied*, 96-C-0714 (La. 09/27/96), 679 So.2d 1358.

[38] *CheckPoint Fluidic Systems Intern., Ltd. v. Guccione*, 888 F.Supp.2d 780, 796 (E.D. La. 2012) (internal quotation marks omitted) (quoting *Frederic v. KBK Fin., Inc.*, No. 00–0481, 2001 WL 30204, at *5 (E.D. La. Jan. 9, 2001)).

[39] *Elliott Company v. Montgomery*, No. 15-02404, 2016 WL 6301042, at *6-7 (W.D. La. Sept. 28, 2016), *report and recommendation adopted*, 2016 WL 6301106 (W.D. La. Oct. 26, 2016) (quoting *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F.Supp.2d 521, 534 (E.D. La. 2007) (internal citations omitted)); *see, also, Harrison v. CD Consulting, Inc.*, 934 So.3d at 170.

Document Number: 52613

### E.    Fraud

"The elements of a Louisiana delictual fraud or intentional misrepresentation cause of action are: (a) misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury."[40]  In Louisiana "[a]lthough a party may keep absolute silence and violate no rule of law or equity, ... if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to [disclose] the whole truth."[41]

Louisiana courts have been inconsistent with explicitly naming justifiable reliance as an element of this claim.[42]  "Federal courts applying Louisiana law, by contrast, routinely include justifiable reliance as a distinct element of the claim."[43]  In *Sun Drilling Products Corporation v. Rayborn*,[44] the court explained:

> Two elements are necessary to prove fraud: (1) an intent to defraud and (2) actual or potential loss or damage. Federal courts applying Louisiana law indicate that reliance is an element of a claim for fraud. Moreover, for fraud or deceit to have caused plaintiff's damage, he must at least be able to say that had he known the truth, he would not have acted as he did to his detriment. Whether this element is labeled reliance, inducement, or causation, it is an element of a plaintiff's case for fraud. [45]

---

[40] *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999).

[41] *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412 (5th Cir.2008) (quoting *Am. Guar. Co. v. Sunset Realty & Planting Co., Inc.*, 208 La. 772, 23 So.2d 409, 455–56 (1944)).

[42] *Thomas v. Chambers*, No. 18-1373, 2019 WL 485781 at *3 (E.D. La. Feb. 7, 2019)(*Compare Williamson v. Haynes Best Western of Alexandria*, 688 So. 2d 1201, 1239 (La. App. 4 Cir. 1997) ("Two elements are necessary to prove fraud: an intent to defraud and actual or potential loss or damages."), with *Becnel*, 982 So. 2d at 894 ("To recover under a cause of action in delictual fraud, a plaintiff must prove three elements: (1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury.")).

[43] *Id.* (citing, *e.g.*, *Kadlec*, 527 F.3d at 418; *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 624 (5th Cir. 1993); *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1131 n.33 (5th Cir. 1988)).

[44] 798 So. 2d 1141 (La. App. 4 Cir. 2001).

[45] *Id.* at 1152-53 (internal citations omitted).

Thus, "it is immaterial whether Louisiana courts always explicitly list justifiable reliance as an element. They nonetheless recognize that a party asserting fraud is required to allege that it was unaware that the opposing party's representation was false, and that the misrepresentation caused it to act differently than it would have had it known the truth."[46]

The Court finds that the same disputed facts discussed above touch on potential liability for fraud, and the Court declines to grant summary judgment based on the disputed material facts and the need to make credibility determinations on this issue.

### F.    Remaining State Law Claims

Plaintiffs concede they have not asserted a separate cause of action for civil conspiracy.[47]  Accordingly, there is no claim to dismiss.

The Court previously granted Defendants' *Motion for Partial Summary Judgment* on Plaintiffs' unjust enrichment claim for the reasons given at that time.[48]

The Court finds that the issue of "comparative fault" is not a claim subject to determination on a summary judgment.

---

[46] *Thomas*, 2019 WL 485781 at *3
[47] Rec. Doc. No. 168 at 24.
[48] Rec. Doc. No. 217.
Document Number: 52613

For the reasons set forth above, the Defendants' *Joint Motion for Partial Summary Judgment on Claims under Louisiana Law*[49] is hereby DENIED except as limited by the Court's *Ruling* as indicated.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 25th day of July, 2019.

_____
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[49] Rec. Doc. No. 90.
Document Number: 52613